**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| TIMOTHY SCOTT PFALZGRAFF, | ) | NO. ED CV 15-1017-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

Plaintiff filed a Complaint on May 22, 2015, seeking review of the Commissioner's denial of benefits. The parties filed a consent to proceed before a United States Magistrate Judge on July 15, 2015.

Plaintiff filed a motion for summary judgment on November 16, 2015. Defendant filed a motion for summary judgment on December 16, 2015. The Court has taken both motions under submission without oral argument. See L.R. 7-15; "Order," filed June 24, 2015.

///

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserted disability since December 8, 2004, based on a combination of alleged impairments (Administrative Record ("A.R.") 36-37, 47-57, 228-29, 235-42). An Administrative Law Judge ("ALJ") examined the medical record and heard testimony from Plaintiff, a medical expert and a vocational expert (A.R. 9-322, 350-1256).

The ALJ found Plaintiff disabled from December 8, 2004 through March 1, 2009, but not thereafter (A.R. 13-25). The ALJ determined that, as of March 2, 2009, Plaintiff had the residual functional capacity to perform sedentary work with certain limitations, including the need "to stand and stretch for one to three minutes per hour" (A.R. 20). In at least partial reliance on testimony from the vocational expert, the ALJ found that a person with this functional capacity could perform sedentary jobs of "order clerk food and beverage" and "final assembler" existing in significant numbers in the national economy (A.R. 24). The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner

of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are supported by substantial evidence and are free from material[1] legal error.

///

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

In seeking a remand, Plaintiff appears to argue: (1) Social Security Ruling ("SSR") 00-4p prohibits a vocational expert from giving testimony in conflict with Administration policy; (2) SSR 83-12 constitutes Administration policy that a person who must alternate sitting and standing cannot perform the full range of sedentary work; and (3) remand is required because the vocational expert testified, <u>inter alia</u>, that a person who must stand and stretch for one to three minutes per hour can perform the full range of unskilled sedentary work. As discussed below, Plaintiff's arguments fail to demonstrate any error material to the Administration's conclusion that Plaintiff can perform sedentary jobs of "order clerk" and "final assembler" existing in significant numbers in the national economy.

SSR 00-4p provides in pertinent part that "SSA adjudicators may not rely on evidence provided by a VE [vocational expert], VS, or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions."  In attempting to prove a violation of SSR 00-4p, Plaintiff relies on SSR 83-12. As a threshold matter, however, SSR 83-12 expressly concerns the adjudication of "claims in which an individual has only exertional limitations."  Because Plaintiff has both exertional and non-exertional limitations, SSR 83-12 may not be directly applicable to Plaintiff's case. See <u>Tackett v. Apfel</u>, 180 F.3d at 1103 (a "need to shift, stand up, or walk around every 30 minutes is a significant <u>non-exertional</u> limitation . . .") (emphasis added); <u>Whiting v. Commissioner</u>, 2013 WL 5595359, at *6 (E.D. Mich. Oct. 11, 2013) (SSR 83-12 "does not directly apply" to claimants who have both exertional

4

and non-exertional limitations).

Despite SSR 83-12's express applicability only to claimants with exclusively exertional limitations, the ruling does purport to address as a "special situation" a need to "alternate sitting and standing." This portion of SSR 83-12 provides:

> In some disability claims, the medical facts lead to an assessment of RFC [residual functional capacity] which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would

5

>not be found disabled. However, most jobs have ongoing work
>processes which demand that a worker be in a certain place
>or posture for at least a certain length of time to
>accomplish a certain task. Unskilled types of jobs are
>particularly structured so that a person cannot ordinarily
>sit or stand at will. In cases of unusual limitation of
>ability to sit or stand, a VS [vocational specialist] should
>be consulted to clarify the implications for the
>occupational base.

Thus, SSR 83-12 appears to convey two conclusions in tension with each another: (a) a person who must "get up and stand or walk for awhile . . . is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work . . ."; and (b) a person may "sit or stand with a degree of choice" while performing some jobs, including some unskilled jobs (including presumably, some sedentary unskilled jobs). Given the tension between these two conclusions, as well as SSR 83-12's use of the qualifying term "ordinarily," SSR 83-12 may not reasonably be interpreted as Administration policy that all persons who must alternate sitting and standing are incapable of performing any unskilled sedentary jobs. To the contrary, SSR 83-12 suggests that, while unskilled jobs are "structured so that a person cannot <u>ordinarily</u> sit or stand at will," an ALJ should consult an expert to clarify the impact on the occupational base of a need to alternate sitting and standing. <u>See</u> SSR 83-12 (emphasis added). In the present case, the ALJ consulted a vocational expert, who identified significant numbers of two specific sedentary jobs assertedly performable by a person who must stand and

stretch for one to three minutes per hour. This part of the vocational expert's testimony (and the ALJ's reliance thereon) did not violate SSR 83-12 (or SSR 00-4p).

Ninth Circuit case law confirms that an ALJ properly may consult a vocational expert to identify unskilled sedentary jobs performable by a person who must alternate sitting and standing. See Aukland v. Massanari, 257 F.3d 1033, 1036 (9th Cir. 2001) ("the Commissioner has ruled that in circumstances such as Aukland's, where a claimant is only qualified for unskilled jobs and is unable to sit for prolonged periods, the services of a vocational expert are required") (citing SSR 83-12); Tackett v. Apfel, 180 F.3d at 1103-04 (remanding for the taking of vocational expert testimony to determine whether a claimant needing to "shift, stand up, or walk around every 30 minutes" could perform particular sedentary jobs).

SSR 96-9p is consistent with this Court's interpretation of SSR 83-12.[2] SSR 96-9p expressly purposes "[t]o explain the Social Security Administration's policies regarding the impact of a residual functional capacity (RFC) assessment for less than a full range of sedentary work on an individual's ability to do other work." SSR 96-9p contains a specific discussion of how the Administration will evaluate the impact of a need to "alternate sitting and standing" on a

///

---

[2] Plaintiff appears to concede that the extent of erosion of the unskilled sedentary occupational base for a claimant who must alternate sitting and standing more often than permitted by scheduled breaks is not necessarily 100 percent. See Plaintiff's Motion at 8 ("The extent of erosion is fact dependent").

claimant's ability to perform sedentary work:[3]

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work. . . .
>
> When the extent of erosion of the unskilled sedentary occupational base is not clear, the adjudicator may consult various authoritative written resources, such as the DOT, the SCO, the Occupational Outlook Handbook, or County Business Patterns.

///

---

[3] The greater specificity of SSR 96-9p would appear to make SSR 96-9p controlling over SSR 83-12 in the event of any conflict between the two SSRs on this subject. Cf. D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 (1932) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling").

> In more complex cases, the adjudicator may use the resources of a vocational specialist or vocational expert.[] The vocational resource may be asked to provide any or all of the following: An analysis of the impact of the RFC upon the full range of sedentary work, which the adjudicator may consider in determining the extent of the erosion of the occupational base, examples of occupations the individual may be able to perform, and citations of the existence and number of jobs in such occupations in the national economy.

Thus, SSR 96-9p confirms that Administration policy permits a vocational expert to identify specific sedentary jobs performable by a claimant who must alternate sitting and standing. Cf. Duncan v. Colvin, 593 Fed. App'x 668, 669-70 (9th Cir. 2015) ("SSR 00-4p does not preclude consideration of vocational expert testimony . . . [SSR 96-9p] states that a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled") (citations and quotations omitted).

In Whiting v. Commissioner, supra, a vocational expert had testified that a claimant with a sedentary exertional capacity who must alternate sitting and standing "as needed" could perform the jobs of security monitor and information clerk. Whiting v. Commissioner, 2013 WL 5595359, at *7. In upholding the Administration's denial of disability benefits, the Whiting Court observed that, according to the Sixth Circuit, "a hypothetical question posed to a VE [vocational expert] limiting a claimant to unskilled work that allowed for a sit/stand option did not contravene SSR 83-12." Id. Similarly,

numerous courts have upheld the denial of disability benefits to claimants having a sedentary exertional capacity limited by a need to "stand and stretch" more often than permitted by scheduled breaks. See, e,g., Keen v. Colvin, 2015 WL 5602651 (W.D. Va. Sept. 23, 2015); Hayes v. Commissioner, 2015 WL 5056212 (N.D. Ohio Aug. 26, 2015); Stogsdill v. Commissioner, 2015 WL 1020194 (S.D. Ohio March 9, 2015); Merrill v. Commissioner, 2015 WL 571008 (S.D. Ohio Feb. 11, 2015), adopted, 2015 WL 1637435 (S.D. Ohio Apr. 13, 2015); Eimers v. Astrue, 2013 WL 1819791 (W.D. Pa. Mar. 19, 2013), adopted, 2013 WL 1808961 (W.D. Pa. Apr. 29, 2013).

In the present case, the vocational expert did testify initially that a person having Plaintiff's residual functional capacity "could perform unskilled sedentary work. Actually, the full range of unskilled sedentary work" (A.R. 60-61). The Administration policies discussed above suggest that this initial testimony should not have been interpreted literally and absolutely to mean that all unskilled sedentary jobs are performable by a person who must stand and stretch for one to three minutes per hour. The ALJ did not so interpret this testimony, or, at least, the ALJ did not rely on such an interpretation. The ALJ did not find that Plaintiff can perform the full range of sedentary work (A.R. 20). Rather, the ALJ found that Plaintiff can "perform less than the full range of sedentary work" (id.). The ALJ specifically recognized that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations" (A.R. 24). The ALJ continued:
///

>     To determine the extent of erosion of the unskilled sedentary occupational base caused by these limitations, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity as of March 2, 2009. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as order clerk food and beverage, DOT[] 209.567-014, SVP2[] sedentary, with 1,400 jobs in the local economy and 32,000 jobs in the national economy; and final assembler, DOT 713.687-018, SVP2, sedentary, with 5,000 jobs in the local economy and 50,000 jobs in the national economy.
>
>     Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
>     Based on the testimony of the vocational expert, the undersigned concludes that, beginning March 2, 2009, the claimant has been capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

///
///

1      Thus, although the ALJ appears to have rejected the proposition
2 that a person with Plaintiff's residual functional capacity can
3 perform the full range of unskilled sedentary work, the ALJ accepted
4 the proposition that a person so limited can perform significant
5 numbers of "order clerk" and "final assembler" sedentary jobs.  No
6 evidence in the voluminous record contradicts the conclusion that a
7 person with Plaintiff's capacity can perform significant numbers of
8 these jobs.  The ALJ properly could rely on the vocational expert's
9 identification of specific jobs performable by a person with
10 Plaintiff's residual functional capacity.  See generally Bayliss v.
11 Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  The "full range"
12 exaggeration by the vocational expert - an exaggeration apparently
13 rejected by the ALJ - did not materially affect the Administration's
14 decision.  Therefore, ordering a remand for further administrative
15 proceedings would be an idle act.  Further administrative proceedings
16 could only result in the same sensible conclusion the Administration
17 reached in the decision under review: a need to stand and stretch for
18 one to three minutes per hour does not preclude the performance of
19 some unskilled sedentary jobs existing in significant numbers in the
20 national economy.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

For all of the foregoing reasons,[4] Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 11, 2016.

/S/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court has considered and rejected each of Plaintiff's arguments. Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the Administration. See generally McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).